

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CCC:BTR
F.#2019R01634

*610 Federal Plaza*
*Central Islip, New York 11722-4454*

January 28, 2022

<u>Delivery via ECF and E-Mail</u>

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Vasiliki Apostolopoulos and Thomas Delancey
    <u>Criminal Docket. No. 20 Cr 103 (JMA)</u>

Dear Judge Azrack:

   The government respectfully submits this letter in connection with the sentencing of the above-referenced defendants, which is scheduled for February 16, 2022. On August 6, 2021, the defendants pleaded guilty, pursuant to plea agreements, to an information charging them with knowing and willfully failing to collect, truthfully account for and pay over payroll taxes to the Internal Revenue Service ("IRS"), in violation of Title 26, U.S.C., Section 7202. For the reasons set forth below, the government respectfully recommends that the Court sentence the defendants Apostolopoulos and Delancey to separate terms of imprisonment, Such sentences are appropriate in this case and consistent with the Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

I.   Factual Background

   The defendant Apostolopoulos owned a construction company, WB Contracting Corp., which served customers in New Jersey. Apostolopoulos, also owned a second company, TJD Texas Enterprises, a real estate company, primarily involved in resident rentals in Texas. The defendants operated both companies from their residence in Glen Head, New York. (Presentence Investigation Reports for Vasiliki Apostolopoulos and Thomas Delancey ("PSRs") ¶¶ 3-9).

In an effort to avoid paying taxes, over the course of more than five years, the defendants withdrew over $17,000,000 in checks from WB Contracting Corp and an additional $2.5 million in checks from TJD Texas Enterprises. Though the defendants' regular business bank account was available to supply cash for their business needs, the defendants instead chose to have Thomas Delancey deliver those checks to a New Jersey commercial check casher where a percentage of the face value of their checks was paid to cash the checks. Once the defendants obtained cash, they then used that cash to pay an "off-the-books" payroll for employees, purchased discounted business supplies, and paid multiple personal expenses , including travel expenses, vacation homes, a boat and other personal investments. In preparing their personal and companies tax filings, the defendants supplied records to their accountant that did not reveal these cash expenditures. (PSRs ¶¶ 3-9).

The defendant's tax evasion scheme resulted in a tax loss of $1,875,759.36 in unpaid payroll taxes for the "off the books" employees paid in cash, for which they are jointly liable. The defendant Apostolpoulos, as a result of her failing to report in excess of $2,500,000 in personal income on her tax return, is responsible for an additional tax loss, of $428,808. (PSRs, ¶¶ 6-9; Delancey PSR, ¶ 84; Apostolopoulos PSR, ¶ 78). In November 2021, the defendants made full restitution of $2,305,567.36 to the IRS for their total tax loss.[1]

II.      The PSR and Guidelines Calculation

For Delancey, the Probation Department calculated an adjusted offense level of 19 and Criminal History Category II, resulting in a Guidelines range of imprisonment of 33 to 41 months' imprisonment. (Delancey's PSR ¶¶ 30, 75). For Apostolpoulos, Probation calculated an adjusted offense level of 19 and Criminal History Category I, resulting in a Guidelines range of imprisonment of 30 to 37 months' imprisonment. (Apostolopoulos' PSR ¶¶ 30, 78). The Sentencing Guideline ranges calculated by the Probation Department comport with the sentencing ranges estimated by the government and contained in the plea agreements the defendants entered at the time of their guilty pleas.

As noted in the PSR, these payments fail to make the IRS whole because the "off the books" employees, relying on the false W-2 supplied by the defendants, underreported their actual income on their federal and state income tax returns. (PSR, p. 4, fn.). Given the impossibility of reconstructing the "off the books" cash payrolls, this shortfall cannot be remedied by the IRS. Moreover, the defendants under payment of state income taxes and Worker's Compensation Insurance has not accounted for in the tax loss calculation. The defendants are responsible for unpaid state taxes and such conduct is relevant conduct for the Court's consideration in determining the defendants' sentences. The Second Circuit has repeatedly held that, in determining the amount of "tax loss"

---

[1] The defendants paid restitution to the IRS in three installments: $719,920 in January 2021, and payments $429,808.20 and $1,155,839.36 in November 2021.

attributed to a defendant for purposes of the Sentencing Guidelines, a court should include unpaid state liability related to the defendant's federal tax crimes.  See United States v. Gordon, 291 F.3d 181, 187 (2d Cir. 2002).  Though that amount is uncalculated here , the Court should, as a condition of supervised release or probation, require the defendants to file amended state tax returns and Workers Compensation Insurance reports.

III.     The Defense Sentencing Submissions

         In their sentencing submissions, the defendants urge the Court to impose a non-Guidelines sentence of probation for each defendant.  The defendants have submitted over fifty supporting letters from business, social and charitable organizations.  They seek to mitigate their conduct by noting that Apostolopoulos has no criminal history while Delancey only has a prior commercial bribery conviction.  They argue that the defendants many charitable and good works, and the potential negative consequences on their business, employees, disabled son and their two adult children counsel in favor of non-incarceratory sentences for both defendants.

         The defendants also argue that their effort in making full  restitution prior to sentencing, should be considered as the basis for a reduced sentence, as an "extraordinary acceptance of responsibility" relying on  U.S. v, Garlich, 951 F.2d.161,163 (8th. Cir. 1991).  Alternatively, they note that although "U.S.S.G. § 5K2.0(d)(2) prohibits "departures" based on acceptance of responsibility and (d)(5) generally provides that "unexceptional" efforts at restitution may not be used as a basis for departure, the  Court should consider the payment of restitution as relevant to  the "history and characteristics" of the defendants under Title 18, U.S.C. § 3553(a)(1) in formulating non-incarceratory sentence."  See Sentencing Memorandum and Supplement, Dkts. 32-37 (Joint Sentencing Memorandum, p. 33, fn 2).

         Finally, even though WB Contracting Corp., the construction company through which they ran the "off the books" payroll is now defunct, the defendants note that they operate a  new construction company, Barrett Roofing, a New Jersey and Texas company, which has employed approximately 80 individuals through the current Covid-19 pandemic.  The defendants also continue to manage rental properties in Texas.  The employees of those companies would be at risk of unemployment if both defendants were incarcerated simultaneously.  See Sentencing Memorandum and Supplement. Dkts. 32-37. (Joint Sentencing Memorandum, p. 33)   See: United States v Milikowsky,  65 F.3d 4, 8 (2d Cir. 1995).

III     Discussion

         A.     Terms of Imprisonments are Appropriate in This Case

          In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are no longer mandatory, but should be considered in conjunction with the

factors outlined in 18 U.S.C. § 3553(a).  Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but Booker allows the court to "tailor the sentence in light of other statutory concerns[.]" Kimbrough v. United States, 552 U.S. 85, 101 (2007) (citing Booker, 543 U.S. at 245-56) and Gall v. United States, 552 U.S. 38, 46-49 (2007)).  However, the Supreme Court explained that even though the Guidelines are advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence.  Kimbrough, 552 U.S. at 108 (citing Gall, 552 U.S. at 50 and Rita v. United States, 551 U.S. 338, 347-50 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in 18 U.S.C. § 3553(a).  Id. That statute provides that a Court should consider a number of factors in imposing a sentence, including (among others) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation (§ 3553(a)(2)(A)); and the need for the sentence to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)), and to protect the public from further crime or violations of the defendant (§ 3553(a)(2)(C)).

B.          Analysis

Here, the Court's "starting point and the initial benchmark" when determining the defendants' sentence is, at a minimum,  that each defendant should be imprisoned for a term of from 30 to 33 months.  The defendants have submitted significant information concerning their "history and characteristics" (§ 3553(a)(1)), a sentencing factor under 18 U.S.C. § 3553(a), in consideration of which the Court may determine to mitigate the range of imprisonment called for by the Sentencing Guidelines.

The defendants also argue that their effort in making full  restitution prior to sentencing, which they suggest should be considered as the basis for a reduced sentence, as an "extraordinary acceptance of responsibility" relying on  U.S. v. Garlich, 951 F.2d.161,163 (8th. Cir. 1991)(Approving the consideration of a downward departure for pre-sentence restitution).  The rational of  that case, however, has not been followed in this Circuit and was largely distinguished in subsequent 8th Circuit cases.  Subsequent amendments of the Sentencing Guidelines rejected any departures based on "extraordinary" acceptance of responsibility.

In 2003 the Sentencing Commission, amended the Sentencing Guidelines to specifically indicate that U.S.S.G. § 5K2.0 prohibits "departures" based on acceptance of responsibility.  They further limited the scope of facts that can be considered by the Court to departure from the suggested guidelines by amending U.S.S.G. § 5K2.0(d)(2) to indicate "departures" based on family ties and responsibilities (§ 5Hl.6), employment record (§

5Hl.5), and civic, charitable or … good works (§ 5Hl.11) are "not ordinarily relevant" as the basis for downward departures from the Sentencing Guidelines except in "exceptional cases." See § 5K2.0(a)(4). The Commission did indicate that departures based on a combination of these factors can occur if each is present "to a substantial degree," making the individual case "exceptional," which the U.S.S.G.'s indicate "should occur 'extremely rarely and only in exceptional cases." § 5K2.0, comment. (n.3(C)). Thus, the defendant pre-sentence restitution, while commendable, should not be the basis for a downward departure from the proposed guidelines. See also: <u>Koon v United States</u>, 518 U.S. 81 (1996) (Discussing methodology to be used in determining whether to depart from suggested guidelines).

Moreover, the fact that the defendants retained sufficient monies from their criminal scheme to make full restitution prior to sentencing should not be considered as the basis for greater lenience in sentencing. While this Court may certainly consider collateral consequences in formulating the appropriate sentence, <u>United States v. Stewart</u>, 590 F.3d 93, 141 (2d Cir. 2009), it should reject the defendants' attempt to replace the appropriate sentence with one carrying less deterrent value. Merely because the defendants retained sufficient gains from their scheme to reduce the economic harm they caused is inappropriate. Their ability to retain the gains from their criminal conduct reflects more their greed, acquisitiveness and a complete lack of necessity for the initial commission of the crime, rather than any rehabilitation.

As to the remaining sentencing factors the Court must consider in formulating an appropriate sentence for each of the defendants, Section 3553(a) requires the Court to first consider "the nature and circumstances of the offense" and to impose a sentence that "reflect[s] the seriousness of the offense." 18 U.S.C. § 3553(a)(1), (a)(2)(A). Consideration of this factor suggests that terms of imprisonment are appropriate. The defendants pleaded guilty to committing a serious offense. As described in the PSR, the defendants' pattern of tax fraud spans several years, during which they each took willful steps to defraud the United States and to profit from that conduct. The defendants conduct continued over several years was not a momentary aberration or lapse of reason.

Second, a substantial sentence is necessary to deter not only the defendants but similarly-situated individuals from engaging in fraudulent behavior. Tax fraud and related crimes are premeditated and highly lucrative and thus require heavy sentences to deter. The defendants' behavior may be explained, in part, by the fact that they must have perceived the reward as high, and the punishment as low. Indeed, in some sense, the need for deterrence in tax-fraud sentences – more so than perhaps other crimes – is apparent from the relative numbers: the number of taxpayers in the United States far exceeds the number of auditors and criminal investigators available to the IRS. Courts have routinely recognized this dynamic, as noted in <u>United States v. Snipes</u>, 611 F.3d 855, 872 (11th Cir. 2010): Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying

these guidelines.  Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators. Id. at 872 (quoting U.S.S.G., Ch. 2, Pt. T, introductory cmt).  See also United States v. Ture, 450 F.3d 352 (8th Cir. 2006) (quoting U.S.S.G., Ch. 2, Pt. T, introductory cmt and noting that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others . . . is a primary consideration underlying these guidelines").

The self-employed are a group which arguably have more of an opportunity to dodge their income tax obligations, as there is no third-party reporting to the IRS of the income they earn.  Deterring other self-employed individuals from concealing their income (and the income of their employees) is an important factor in determining the appropriate sentence for the defendants.  Absent such deterrence, others will see the result in this case and cynically conclude that the risks of being caught and punished for tax fraud do not outweigh the potential rewards.  Deterrence is thus critical not only to ensure that a particular individual pays the taxes that the individual owes, but also to ensure that others continue to be honest taxpayers.

Third, Apostolopoulos' lack of criminal history does not mitigate against imposition of a restricted Guideline sentence.  The advisory Guidelines range already reflects the defendant's limited criminal history, placing her in the lowest possible criminal history category.  Given that the Guidelines have accounted for, and hence mitigated her sentence based on this factor, no further variance should be granted based on her lack of criminal history.

With respect to Delancey, his prior conviction for bribery, which gave him a corrupt competitive advantage in the performance of his construction business, evidences a continuing pattern of illegal conduct in the management of his business that requires consideration of incarceration.[2]

To preclude the hardship that may arise should both be incarcerated, either to their employees or to supervise the care of their disabled son, staggered sentencing may be considered so that the two are not simultaneously incarcerated.  Such a solution meets the considerations of  18 U.S.C. § 3553(a)(1). As to the effect that the defendants sentence may have on their employees and disabled son, the Court may impose intermittent or seriatim sentences to ensure only one defendant at a time is incarcerated, and to ensure there their employment of 80 individuals may continue.  The consequences the defendants  may suffer as the result of their criminal conduct is not unique to them.  They are faced by virtually

---

[2] Given Delancey's Covid co-morbidities, (Delancey PSR. ¶ 56,  See: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html See also: https://www.bop.gov/coronavirus/ ), the Court may wish to inquire as to Delancey's current vaccine, booster and/or natural immunity status, and provide opportunity for the defendant  to obtain any needed vaccine prior to incarceration or, if medically necessary, home confinement..

every convicted criminal who appears before the Court, and in virtually every case, those consequences do not replace a sentence of imprisonment.  Nor should they.

           C.        <u>Restitution, Consistent with the Plea Agreement, is not Extraordinary</u>

No order of restitution is necessary as the defendants have paid the IRS restitution pursuant to the terms of the Plea Agreement, relative to their federal tax liabilities.  <u>See</u> Plea Agreements, ¶¶  1(e), 6.  However, the Court should order, as a condition of supervised release,  that the defendants file the appropriate state and workers compensation insurance forms reflecting the income and cash payroll the defendant have admitted.

IV.    <u>Conclusion</u>

The United States relies upon the honesty of taxpayers to fund the government.  The defendants made a deliberate choice to take advantage of the federal tax system for personal profit at the expense of the United States.  For all the foregoing reasons, the government respectfully submits that terms of imprisonment are appropriate in this case and consistent with the Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

Respectfully submitted,

BREHON PEACE
United States Attorney
Eastern District of New York


By: <u>s/Burton T. Ryan, Jr.</u>
    Burton T. Ryan, Jr.
    Assistant U.S. Attorney
    (631) 715-7853

cc:  Clerk of the Court (JMA)

    Bernard Joseph Vaughan
    Counsel For Apostolopoulos

    Barry Levin
    Counsel For Delancey